IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES A. HENSON, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RWT-13-3175 |
| PHILIP MERLING, et al., | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Plaintiff James A. Henson, Jr. filed the above-captioned Complaint pursuant to 42 U.S.C. §1983.  Defendants Acting Lt. Phillip Merling, Sgt. Brett E. Payton, C.O. II Gerald L. Wilson, Jr., C.O. II Vincent J. Lark, Sgt. Christopher D. Bingaman, Sgt. Benjamin A. Wagner, C.O II David Hedrick and Lt. Rodney O. Likin, by their attorney, have filed a Motion to Dismiss, or in the Alternative for Summary Judgment.[1]  ECF No. 22.  Plaintiff has responded. ECF Nos. 24 & 25. After review of the pleadings and applicable law, the Court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be GRANTED.

**BACKGROUND**

Plaintiff alleges that on September 11, 2013, while incarcerated at the Western Correctional Institution ("WCI"), he was assaulted by Defendants. ECF No. 1. He states that Likin instructed

---

[1] The Clerk shall amend the docket to reflect the proper names of Defendants. Defendant "Frederick" has not been served with the Complaint.  For the reasons that follow, even if he had been properly identified and served, Plaintiff's Complaint against him would be subject to dismissal.

1

Merling, Payton, Lark, Wilson, and Hedrick to enter Plaintiff's cell and punch and kick him repeatedly. ECF No. 1. He states that his front tooth was chipped when Defendants slammed his face into the steel bedpost. He states that Defendants "hog-tied" him with a "black-leather dog strap" and dragged him out of the cell backwards, re-injuring his wrist and back. ECF No. 1. He states that Defendants intended to move "another would-be executioner (gang[]member)" into his cell to kill him in retaliation for his having filed grievances and lawsuits. ECF No. 1.

Defendants provide the following information: On September 11, 2013, at approximately 2:30 p.m., Merling directed Payton, Lark, Wilson, and Hedrick to move inmate Warren Fletcher into Plaintiff's cell. ECF No. 22, Ex. 2. Merling avers that the move was initiated to accommodate housing for another inmate who required the use of a wheelchair. *Id.* Merling states that he was not physically present during Fletcher's move into Plaintiff's cell but observed the move from his post in Housing Unit ("H.U.") #4's control center. *Id.* He states that the move occurred without incident and avers that he did not assault Plaintiff, nor witness any other staff member assault Plaintiff. *Id.*

Payton, Lark, Wilson, and Hedrick confirm that on September 11, 2013, at approximately 2:20 p.m., they moved Fletcher into Plaintiff's cell without incident. *Id.*, Exs. 3-6. Payton, Lark, Wilson, and Hedrick state that while placing Fletcher in the cell, Plaintiff stated he was to be single-celled and "no gang members were to be housed with him." *Id.* Payton, Lark, Wilson, and Hedrick aver that Fletcher had no documented gang affiliation, nor was he documented as Plaintiff's enemy. *Id.* Exs. 3-7. They further aver that Plaintiff did not have an order to be single-celled. *Id.* Payton, Lark, Wilson, and Hedrick aver that they did not assault Plaintiff, nor witness any other staff member assault Plaintiff. *Id.*, Ex. 3-6.

Frederick and Wagner aver that on the same date Fletcher was transferred into Plaintiff's cell, at approximately 5:15 p.m., Plaintiff and inmate Fletcher were removed from the cell after Fletcher broke the cell window. *Id*., Exs. 8 & 9. Plaintiff and Fletcher were both escorted without incident to the medical department for assessment. *Id*. Frederick and Wagner aver that neither of them assaulted Plaintiff, nor did they witness any other staff assault Plaintiff. *Id*.

Bingaman confirms that Plaintiff was evaluated by R. Browning, LPN at approximately 5:15 p.m. on September 11, 2013, in WCI's Medical Department after Plaintiff's cellmate broke the window in the cell. *Id*., Ex. 10. Bingaman states that Plaintiff refused to cooperate with medical staff, declining to answer questions or talk. *Id.* Bingaman states that he was not directed by Likin to withhold medical treatment or meals from Plaintiff as punishment, as Plaintiff alleges. *Id.* Bingaman further avers that he did not assault Plaintiff nor has he witnessed other staff assault Plaintiff. *Id*.

Likin avers that on September 11, 2013, he was the H.U. Manager for Plaintiff's unit. *Id.*, Ex. 11. He states that Plaintiff's claim that he directed Merling, Payton, Lark, Wilson, and Hedrick to assault Plaintiff is a complete fabrication. *Id.* He avers that on September 11, 2013, he ordered staff to Plaintiff's cell in order to move Plaintiff and his cellmate, Fletcher, from the cell after Fletcher broke a shelf and the window in the cell. *Id*. Likin states that the order to remove the inmates from the cell was given in order to protect Plaintiff due to Fletcher's outburst, and so to remove Fletcher due to his destruction of state property. *Id*. After the inmates were removed from the cell, photographs of them and the cell were taken. *Id*.

Plaintiff filed a Request for Administrative Remedy (ARP) concerning the alleged assault on September 11, 2013. *Id*. In his ARP, Plaintiff claimed that Likin left standing orders with

3

Bingaman that Plaintiff "was only to receive bag meals" and "was not to be escorted to the medical department to receive medical treatment for his alleged injuries." *Id.* Plaintiff claimed Likin's actions were taken so that Plaintiff's injuries could not be documented or photographed. *Id.* Likin avers that Plaintiff's allegations in the ARP were untrue and fabricated. *Id.* The ARP was dismissed on October 10, 2013. *Id.* Likin avers that he never ordered staff to assault an inmate. *Id.*

Plaintiff's medical records reveal that on September 11, 2013, at approximately 6:03 p.m., Ryan Browning, LPN attempted to evaluate Plaintiff. *Id.*, Ex. 12. Plaintiff refused to provide his name and identification number, or to even look at Browning. *Id.* Plaintiff declined to say whether he had any injuries. *Id.* Browning did not observe any injuries and noted there was no glass on Plaintiff. *Id.* No vitals were taken due to Plaintiff's lack of cooperation. *Id.*

The following day, at approximately 2:48 a.m., Plaintiff was seen by James Wilt, RN. *Id.* Plaintiff complained of bilateral wrist pain, swelling, and a broken tooth. *Id.* Notably, he did not indicate to medical personnel that he had been assaulted by correctional staff. *See id.* No swelling in the wrist, forearm or hand was observed. *Id.* Wilt noted that tooth #9 was slightly loose, but there were "no vis[i]ble signs of trauma to [the] tooth, lips, or gum areas." *Id.* Plaintiff "appeared to be in no distress," and the injuries Plaintiff complained of "were in areas where there was scarring from old wounds." *Id.* Wilt further noted that there was "[n]o edema to [Plaintiff's] wrists, mouth or head." *Id.* The following day, Plaintiff requested to review his medical chart. *Id.* Plaintiff was next seen in the medical department on September 13, 2013. *Id.* His only complaint was a sore throat and he requested new insoles. *Id.* Plaintiff was next evaluated on September 19, 2013, due to his continued complaint of a sore throat. *Id.* On September 29, 2013, Plaintiff again requested a chart review. *Id.*

4

**STANDARD OF REVIEW**

I. <u>**Motion to Dismiss**</u>

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is "to test the sufficiency of a complaint." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). In reviewing the Complaint in light of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the Complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a Complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### II. Summary Judgment

Summary Judgment is governed by Federal Rule of Civil Procedure 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d. 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986), the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party "fails to make a sufficient showing" on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## ANALYSIS

The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

As a prisoner, Plaintiff is subject to the strict requirements of these exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528-29 (2002). Exhaustion is also required even though the relief sought is not offered through administrative procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, "unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA, or that the defendants have forfeited their right to raise non-exhaustion as a defense." *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners "pursue administrative grievances until they receive a final denial of the claim, appealing through all available stages in the

administrative process." *Chase*, 582 F. Supp. 2d at 530; *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after the prison authority denied relief"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The Court first considers Defendants' argument that the case should be dismissed in its entirety due to Plaintiff's failure to exhaust his administrative remedies. Defendants note that between August 14, 2009 and January 30, 2014, while housed at WCI, Plaintiff filed 101 ARPs. ECF No. 20, Ex. 15. On September 30, 2013, he filed ARP WCI #1452-13 concerning the allegations contained in this case. *Id.*, Exs. 15 & 16. The ARP was investigated and dismissed on October 10, 2013, as no evidence supported Plaintiff's claims. *Id.* Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"), avers that despite Plaintiff having previously filed grievances with the IGO, he did not file a grievance pertaining to ARP WCI #1452-13. *Id.*, Ex. 17.

This Court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the Internal Investigation Unit (IIU) or where the matter is referred to the IIU. In the instant case however, the IIU did not conduct an investigation regarding Plaintiff's complaint. *Id.*, Ex. 18.

In his Opposition, Plaintiff states he has attached copies of appeals of the dismissal of his ARP and filings with the IGO, to which he claims he never received a response. ECF No. 24. Plaintiff has attached several ARPs to his Opposition. *Id.*, Attachments. The ARPs provided by Plaintiff are dated March and April 2014, well outside the time frame for instituting an ARP regarding the complaints raised in the instant Complaint, as well as outside the time for appealing

the October 10, 2013, dismissal of his original ARP.  Further, the ARPs supplied to the Court by Plaintiff contain case numbers which do not correspond to ARP WCI-1452-13, the ARP originally filed by Plaintiff regarding the September 11, 2013 events.  Plaintiff's original ARP WCI-1452-13 was fully investigated, despite Plaintiff's refusal to be interviewed during the investigation, and the complaint dismissed.  ECF No. 20, Ex. 16.  Plaintiff took no further action.  *Id.*, Exs. 15 & 17.  Plaintiff offers no plausible explanation for his failure to exhaust administrative remedies.   Thus, the Court concludes that Plaintiff failed to exhaust administrative remedies which were fully available to him.  Given Plaintiff's failure to exhaust remedies, the Court need not reach the merits of Plaintiff's claim or address Defendants' additional defenses.  A separate Order follows.

Date:  September 8, 2014                                             /s/
                                                                ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE